Trina MEHL, Jason Olsen, Susan Olsen,
and all others similarly situated,
Plaintiffs,

v.

CANADIAN PACIFIC RAILWAY, LIMIT-
ED and its wholly owned subsidiary Ca-
nadian Pacific Railway Company, and
Soo Line Railroad Company, d/b/a Cana-
dian Pacific Railway, Defendants.

No. A4–02–009.

United States District Court,
D. North Dakota,
Northwestern Division.

May 4, 2005.

Mike Miller, Stacey Elizabeth Tjon, Tim M. O'Keeffe, Kennelly & O'Keeffe Ltd., Fargo, ND, Ronald S. Goldser, John Gordon Rudd, Jr., David M. Cialkowski, Minneapolis, MN, Daniel E. Becnel, Jr., Darryl J. Becnel, Reserve, LA, for Plaintiffs.

Stephen W. Plambeck, Bruce Hilding Carlson, Fargo, ND, Timothy R. Thornton, Scott G. Knudson, Matthew D. Forsgren, Kevin M. Decker, Minneapolis, MN, David S. Maring, Bismarck, ND, for Defendants.

## ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

HOVLAND, Chief Judge.

Before the Court is the Plaintiffs' Motion for Class Certification filed on September 2, 2004. On October 1, 2004, the Defendants filed a Motion for an Evidentiary Hearing on Class Certification. For the reasons set forth below, the Court denies the Defendants' Motion for an Evidentiary Hearing and grants, in part, the Plaintiffs' Motion for Class Certification.

## I. *BACKGROUND*

This matter stems from the derailment of a Canadian Pacific Railway freight train that occurred near Minot, North Dakota, on January 18, 2002. Several damaged tanker cars released anhydrous ammonia into the air. There is no dispute that anhydrous ammonia can be dangerous in high concentrations. The dosage level of exposure is the determinative factor in the assessment of causation and injury. On January 25, 2002, the Plaintiffs filed suit on behalf of themselves and a class of similarly situated persons, claiming that the defendant, Canadian Pacific Railway, (hereinafter referred to as "CPR") was responsible for the personal injuries and property damage suffered because of the trail derailment.

The Plaintiffs have asked the Court to certify the following classes:

I. Injury Class: A Rule 23(b)(3) class consisting of all persons who were in the anhydrous ammonia cloud in and around the city of Minot, North Dakota, and who were adversely affected by the release of the hazardous chemical on January 18, 2002, and who have sustained property damages, property value diminution, personal injuries, emotional, mental or economic damages, or inconvenience as a result of

the derailment and hazardous chemical release.

II. Medical Monitoring Class: A Rule 23(b)(2) class consisting of all persons who were in the anhydrous ammonia cloud in and around the city of Minot, North Dakota, on January 18, 2002.

## II. LEGAL DISCUSSION

### A. EVIDENTIARY HEARING

CPR has requested an evidentiary hearing on the matter of class certification. The Plaintiffs' oppose the request for an evidentiary hearing.

> The propriety of a class action status can seldom be determined on the basis of the pleadings alone.... The District Court must have before it "sufficient material to determine the nature of the allegations, and rule on compliance with the Rule's requirements...." Securing this material does not always require a formal evidentiary hearing.... Where, however, the pleadings themselves do not conclusively show whether the Rule 23 requirements are met, the parties must be afforded the opportunity to discover and present documentary evidence on the issue.

*Int'l Woodworkers of America v. Georgia–Pacific Corp.*, 568 F.2d 64, 67 (8th Cir.1977) (quoting *Walker v. World Tire Corp.*, 563 F.2d 918, 921 (8th Cir.1977)). In support of their respective positions, both parties have provided the Court with a plethora of exhibits comprising hundreds of pages, all of which the Court has carefully reviewed. The Court is hard-pressed to imagine what additional relevant evidence would be presented at an evidentiary hearing. The Court finds the exhibits submitted by the parties are "sufficient material" to determine whether the Plaintiffs' have met the requirements of Rule 23.

■ Included in their request for an evidentiary hearing is CPR's assertion that the Plaintiffs' experts' opinions are flawed, and thus, the Plaintiffs' assertions supporting their motion for class certification are invalid. Not surprisingly, CPR's experts contend that the Plaintiffs' experts' opinions are incorrect. The Plaintiffs respond by contending it is inappropriate to resolve disputes between experts' opinions at the class certification stage.[1]

The Eighth Circuit has recently addressed the issue of using experts' opinions at the class certification stage:

> Appellants argue on appeal that the district court improperly resolved disputes between the parties' experts that go to the merits of the case. We have stated that in ruling on class certification, a court may be required to resolve disputes concerning the factual setting of the case. This extends to the resolution of expert disputes concerning the import of evidence concerning the factual setting—such as economic evidence as to business operations or market transactions. While the district court's language may have been overbroad in places, we believe the district court's findings as to the experts' dispute were properly limited to whether, if appellants' basic allegations were true, common evidence could suffice, given the factual setting of the case, to show classwide injury.

*Blades v. Monsanto Co.*, 400 F.3d 562, 574–75 (8th Cir.2005). The district court found it was appropriate to consider all evidence at the class certification stage. *Id.* at 570–71. Accordingly, the district court "considered all expert testimony offered by both sides in

---

1. The Plaintiffs have offered the opinions of Dr. James G. Dahlgren, a board certified internist and an assistant clinical professor of medicine at University of California Los Angeles; Dr. C.B. Scrignar, a physician specializing in the field of psychiatry, behavior therapy, stress and anxiety, posttraumatic stress disorder, and forensic psychiatry; Dr. Neal A. Sher, a board certified ophthalmologist; Dr. Vasilis M. Fthenakis, a chemical engineer with a Ph.D. in fluid dynamics and atmospheric science; and Dr. William J. Nassetta a board certified internist with a M.P.H. and a specialty in environmental health.

The Defendants have offered the opinions of Dr. Thomas F. Mulrooney, a clinical associate professor of medicine at the University of Minnesota Medical School; Dr. Steven Carter, a licensed psychologist with training and clinical experience treating posttraumatic stress disorder, major depressive disorder, generalized anxiety disorder, bipolar disorder, substance abuse disorder, and traumatic brain disorder; and Dr. Alan Weingarden, a licensed physician familiar with the symptoms and physical manifestations of anhydrous ammonia exposure.

support of or in opposition to class certification" and "afforded that testimony such weight as ... deemed appropriate." *Id.* Other district courts within the Eighth Circuit have reached similar conclusions. *See In re St. Jude Medical, Inc. Silzone Heart Valves Products Liability Litig.*, No. MDL 01–1396 JRTFLN, 2003 WL 1589527 (D.Minn. March 27, 2003) (holding a full review of expert testimony pursuant to *Daubert* was inappropriate at the class certification stage, but nevertheless carefully scrutinizing the medical evidence to determine whether it supported class certification); *In re Monosodium Glutamate Antitrust Litig.*, 205 F.R.D. 229, 234 (D.Minn.2001) (holding that a court cannot, and should not, engage in a *Daubert* analysis at the class certification stage); *Midwestern Machinery v. Northwest Airlines*, 211 F.R.D. 562, 565 (D.Minn.2001) (holding that the application of the *Daubert* test is somewhat limited at the class certification stage and that a party and its experts should not be expected to have fully evaluated all data at the preliminary stage of class certification); *see also* Steven Glickstein, Melissa C. Morrow, Julie K. duPont, & Kaye Scholer LLP, *Does Daubert Apply to Class Certification Hearings?*, 695 P.L.I. Litig. 423 (2003).

The Court finds the district court's analysis in *In re Visa Check/MasterMoney Antitrust Litig.*, 192 F.R.D. 68, 77 (E.D.N.Y. 2000), to be persuasive:

> It cannot be that a court could certify a class ... on the basis of an expert opinion so flawed that it is inadmissible as a matter of law. Although there is a role for a *Daubert* test here, it is a limited one, tailored to the purpose for which the expert opinion is offered. The question is not, therefore, whether a jury at trial should be permitted to rely on [the expert witness's] report to find facts as to liability, but rather whether I may utilize it in deciding whether the requisites of Rule 23 have been met.

The Court finds it unnecessary to hold an evidentiary hearing on the motion for class certification. The Court has carefully reviewed the expert opinions offered by both parties and will give the expert opinions such weight as deemed appropriate in determining whether class certification is warranted.

The Defendants' Motion for an Evidentiary Hearing is denied.

## B. *CLASS CERTIFICATION*

██ "Rule 23 of the Federal Rules of Civil Procedure governs a district court's consideration of a motion for class certification." *Carlson v. C.H. Robinson Worldwide, Inc.*, No. Civ. 02–3780 JNE/JGL, 2005 WL 758602, *6 (D.Minn. March 31, 2005). The decision whether to certify a class action is left to the sound discretion of the district court. *Coleman v. Watt*, 40 F.3d 255, 259 (8th Cir.1994). In determining whether to certify a class action, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). "Accordingly, while the Court must conduct a 'rigorous analysis,' *see Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), class certification is a procedural determination and should not include an inquiry into the merits." *Carlson v. C.H. Robinson Worldwide, Inc.*, No. Civ. 02–3780 JNE/JGL, 2005 WL 758602, *6 (D.Minn. March 31, 2005)(citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–8, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). The plaintiff bears the burden of satisfying the requirement of Rule 23. *Coleman v. Watt*, 40 F.3d 255, 259 (8th Cir.1994). The Court's duty to assure compliance with Rule 23 continues even after the certification. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

### 1. *RULE 23(A) REQUIREMENTS*

Rule 23(a) of the Federal Rules of Civil Procedure sets forth the prerequisites to a class action. It provides:

> One or more members of a class may sue as representative parties of behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4)

the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). The requirements of Rule 23(a) must be satisfied as to each proposed class or subclass. *Paxton v. Union National Bank*, 688 F.2d 552, 559 (8th Cir. 1982). The Court will review the requirements of Rule 23(a) as to each of the proposed classes.

### a. *NUMEROSITY*

"Under Rule 23(a), the class must be 'so numerous that joinder of all members is impracticable.'" *Tate v. Weyerhaeuser Co.*, 723 F.2d 598, 609 (8th Cir.1983) (quoting Fed. R.Civ.P. 23). "Although, ... no arbitrary rules regarding the necessary size of classes have been established, the plaintiff bears the burden of establishing that numerosity does exist." *Belles v. Schweiker*, 720 F.2d 509, 515 (8th Cir.1983).

A number of factors are relevant to this inquiry, the most obvious of which is, of course, the number of persons in the proposed class. ... In addition to the size of the class, the court may also consider the nature of the action, the size of individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members.

*Paxton v. Union National Bank*, 688 F.2d 552, 560 (8th Cir.1982) (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1762 (2d ed.1986)).

■ The Plaintiffs assert that thousands of people were exposed to and injured by the anhydrous ammonia cloud from the trail derailment on January 18, 2002. The Plaintiffs' rely on the conclusion of their expert witnesses that every person exposed to the amount of anhydrous ammonia present after the train derailment[2] was injured.[3] This arguably includes more than 36,000 residents of Minot, North Dakota.

CPR contends that joinder is not impracticable because of the geographic concentration of the potential class members. CPR relies on the National Transportation Safety Board's Report ("NTSB Report"), which concluded that 11,600 people were exposed to anhydrous ammonia and 312 people were injured, including one fatality and eleven "serious" injuries. CPR also argues that not everyone who was exposed to anhydrous ammonia suffered an injury.[4] CPR contends that anhydrous ammonia is relatively benign at lower levels of concentration.

■ In determining whether class certification is appropriate, "the court must look only so far as to determine whether, given the factual setting of the case, if the plaintiffs general allegation are true, common evidence could suffice to make out a prima facie case for the class." *Blades v. Monsanto Co.*, 400 F.3d at 566–67 (8th Cir.2005). The Court has carefully reviewed the affidavits and reports of each expert witness, and finds that the expert opinions submitted by the Plaintiffs are not "so flawed that [they] are inadmissible as a matter of law." *See In re Visa Check/MasterMoney Antitrust Litig.*, 192 F.R.D. 68 (E.D.N.Y.2000). At this stage, the Court need not, and indeed may not, determine which set of expert witnesses is more credible. The ultimate determination of whether the proposed class members were injured is a fact question left to the province of the jury. Thus, the Court finds the Plaintiffs have alleged that a sufficient number of potential class members exist to make joinder impracticable. Therefore, the Court finds the Plaintiffs have satisfied the numerosity requirement of Rule 23(a).

### b. *COMMONALITY*

■ Commonality is satisfied when the legal question "linking the class members is substantially related to the resolution of the litigation." *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir.1995). However, "[t]he rule does not require that *every* ques-

---

2. Report of Vasilis M. Fthenakis, Ph.D. (Docket No. 180, Exhibit 1).

3. *See* Affidavit of James G. Dahlgren, M.D., ¶¶ 11, 20, 22 & 26 (Docket No. 182); Affidavit of Neal A. Sher, M.D., ¶ 16 (Docket No. 185).

4. See Affidavit of Dr. Thomas F. Mulrooney, ¶ 4 (Docket No. 191); Affidavit of Phillip T. Goad, Ph.D., ¶¶ 14–18 (Docket No. 194); Affidavit of Dr. Alan Weingarden, ¶ 3 (Docket No. 192).

tion of law or fact be common to every member of the class." *Paxton v. Union National Bank,* 688 F.2d 552, 561 (8th Cir. 1982) (emphasis added). "Rather, Rule 23 is satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.'" *DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1174 (8th Cir.1995) (citing *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 561 (8th Cir.1982))(quoting *American Fin. Sys., Inc. v. Harlow,* 65 F.R.D. 94, 107 (D.Md.1974)). It is important to note that while a class may satisfy the commonality requirement of Rule 23(a), the class may fail to satisfy the "far more demanding" predominance requirement of Rule 23(b)(3). *Thompson v. American Tobacco Co. Inc.,* 189 F.R.D. 544, 549 (D.Minn.1999)(quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

The Plaintiffs contend that the proposed class members share common questions of causation and liability among others. CPR fails to specifically address the commonality issue under Rule 23(a), but does provide extensive discussion of the predominance factor of Rule 23(b)(3) as to the proposed injury class.

Several courts have found the commonality requirement of Rule 23(a) is satisfied in mass accident cases where class members share liability issues. *See e.g., Watson v. Shell Oil, Co.,* 979 F.2d 1014, 1021–22 (5th Cir.1992) (refinery fire and explosion); *Harvey v. St. Croix Alumina, LLC,* Civ. No. 1999–0036, 2000 WL 1679502, 2000 U.S. Dist. LEXIS 13102 (D.V.I. Aug. 7, 2000)(hurricane blowing hazardous products); *Sala v. National Railroad Passenger Corp.,* No. 88–1572, 1988 WL 84125, 1998 U.S. Dist. LEXIS 8753 (E.D.Pa. Aug. 4, 1988)(Amtrack train derailment); *Freeman v. Celebrity Cruises,* 93 Civ. 5270(LMM), 94 Civ. 5473(LMM), 94 Civ. 5546(LMM), 94 Civ. 5610(LMM), 1994 WL 689809, 1994 U.S. Dist. LEXIS 17455 (S.D.N.Y. Dec. 8, 1994) (exposure to Legionnaires' disease on cruise ship); *Self v. Illinois Cent. R.R., et al.,* No. 96–4141 C/W 97–0007 C/W 97–0375, 1998 WL 122604, 1998 U.S. Dist. LEXIS 3736 (E.D.La. March 18, 1998) (train derailment and chemical spill).

■ The Court finds persuasive the case of *Self v. Illinois Cent. R.R., et al.,* No. 96–4141 C/W 97–0007 C/W 97–0375, 1998 WL 122604, 1998 U.S. Dist. LEXIS 3736 (E.D.La. March 18, 1998). Just as in *Self,* where the suit was based on injuries caused by a train derailment, the proposed class members' claims in this action are all based on the alleged injuries suffered as a result of the train derailment near Minot on January 18, 2002.

The Court finds the Plaintiffs have established that the proposed class members share common questions of law, most significantly the issue of liability. Undoubtedly, the proposed class members would present identical evidence on the issue of CPR's liability for the train derailment, and the resolution of this issue would apply equally to all proposed class members. The Court also finds that the proposed class members share common questions of fact, again primarily relating to the issue of liability. The Court finds the Plaintiffs have established that the proposed class members share common issues of fact and law. Therefore, the "commonality" requirement of Rule 23(a) has been satisfied.

#### c. *TYPICALITY*

■ "Typicality under Rule 23(a)(3) means that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir. 1996) (quoting *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 830 (8th Cir.1977) *cert. denied,* 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977)). This burden is met so long as "other class members have claims similar to the named plaintiff." *Id.* "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.* (citing *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 831 (8th Cir.1977)). "This requirement is generally considered to be satisfied 'if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory.'" *Paxton v. Union National Bank,* 688 F.2d 552, 562 (8th Cir.1982) (quoting Charles Alan Wright, Arthur R.

Miller & Mary Kay Kane, 7A *Federal Practice and Procedure*, § 1764, at n. 21.1 (1972 & Supp.1982)). However, a demonstration of typicality "requires something more than general conclusory allegations." *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir.1990).

■ The Plaintiffs assert the proposed class members share the same theories of recovery, i.e., that CPR, through its actions and inactions, is liable for all class members' injuries, regardless of the issues surrounding individual member's exposure. CPR argues that typicality is not present because the named Plaintiffs have not suffered property damage, lost wages or business profits, or long-term psychological harm. CPR also argues the proposed class members were exposed to different levels of anhydrous ammonia and, therefore, the named Plaintiffs' claims are not typical of the class.

It is clear from the record that the named Plaintiffs have adequately asserted claims of personal injuries and property damage. *See* Second Amended Complaint, ¶¶ 6, 16, 17, & 18 (Docket No. 162). Whether they will ultimately prevail on such claims is a question for the jury to resolve. The differences pointed out by CPR are nothing more than "factual variations." As the United States Supreme Court has held, such "[f]actual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir.1996).

The Court recognizes that potential class members will have varying types and amounts of damages. However, the record clearly establishes that the claims of all of the proposed class members "stem from a single event or are based on the same legal or remedial theory." *Paxton v. Union National Bank*, 688 F.2d 552, 562 (8th Cir.1982) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1764, at n. 21.1 (1972 & Supp.1982)). As such, the Court finds the Plaintiffs have satisfied the "typicality" requirement of Rule 23(a).

#### d. *ADEQUATE REPRESENTATION*

"The adequacy of representation requirement of Rule 23(a)(4) is of critical importance in every class action." *Hervey v. City of Little Rock*, 787 F.2d 1223, 1230 (8th Cir. 1986). "Adequacy of representation entails the concern over whether the class representatives and their counsel will competently and vigorously pursue the lawsuit and the concern that differences exist between the interests of the class representative and the class." *Id.* (internal quotations omitted). It "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

■ "A class representative 'must be part of the class and "possess the same interest and suffer the same injury" as the class members.'" *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir.1996) (internal citations omitted). "A named plaintiff who lacks the desire to 'vigorously pursue' the interests of potential class members is not a fair and adequate representative of the class." *In re Milk Products Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir.1999). "A proposed class representative is not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation." *Id.*

■ CPR contends that the named Plaintiffs are not adequate representatives because they lack the knowledge and understanding to be capable of controlling or prosecuting the action. The Plaintiffs respond by asserting that the named Plaintiffs have regularly followed the litigation through correspondence and conversations with counsel. The named Plaintiffs have signed discovery requests, signed authorizations, and submitted to depositions. There is no question the named Plaintiffs have played an active role in the prosecution of the case to date. The Court finds CPR's contention that the named Plaintiffs lack the knowledge and understanding to control the action is without merit.

CPR also asserts that the named Plaintiffs are not adequate representatives of the proposed class because differences exist between

the interests of the named Plaintiffs and the proposed classes. CPR contends that the named Plaintiffs cannot adequately represent those potential class members who have signed "waivers" or "releases" in exchange for monetary settlements.

The record reveals that after the derailment in January 2002, CPR set up a claims office to settle claims arising from the derailment. Those individuals who accepted CPR's settlement offers signed releases or waivers. CPR states that more than 20,000 individuals have signed releases since the derailment.

North Dakota law includes a statute setting forth what is commonly referred to as a "cooling-off period." The statute states that a settlement of claims:

> for relief for damages on account of any personal injuries received ... is voidable if made within thirty days after the injury or if made while the person so injured is under disability from the effect of the injury so received and within six months after the date of the injury.

N.D.C.C. § 9–08–08.

Plaintiff Jason Olsen signed a release on January 20, 2002, and CPR paid him $388 for expenses and lost wages. The release stated as follows:

> In consideration of the payment to me (us), of the amount indicated below, receipt of which is hereby acknowledged, I (we) Jason Olson (sic) hereby release and discharge the Soo Line Railroad Company, Soo Line Corporation, CP Rail, CP Rail Systems and Canadian Pacific Railway Company and all of their respective parents, subsidiaries, predecessors, insurers and affiliated companies, and all of their officers, agents, and employees from all liability for all claims, demands and liabilities of whatsoever kind, which I (we) now have or may hereafter have on account of an incident involving a derailment on or about January 18, 2002 at or near Minot, North Dakota, and from all such claims and demands whatsoever I (we) now have or may hereafter have on account of the matter above described.

> ...

> It is expressly understood and agreed that said payment is made in compromise of all said claims; that said compromised does not constitute any admission of liability by the parties hereby released; that the payment aforesaid constitutes the sole consideration for this release; and that no promises or commitments of any kind have been made to me (us) in connection with or as an inducement for this release.

See Docket No. 144, Exhibit B. The check Olsen received stated: "In full release of all claims, demanded and liabilities of whatsoever kind in connection with an evacuation at or near Minot, North Dakota on January 18, 2002." See Docket No. 144, Exhibit C. Plaintiff Jason Olsen successfully petitioned this Court to have his release voided. See Order Granting Plaintiff's Motion for Declaratory Judgment and Denying Plaintiff's Motion for Partial Summary Judgment (Docket No. 153). However, the Court declined to rule on "the validity of the releases or settlements executed by persons other than the named plaintiffs in this action." Id. Both parties agree that the remaining named plaintiffs, Susan Olsen and Trina Mehl, have not signed releases or waivers of any kind.

The Plaintiffs contend that because Jason Olsen signed a release, he can adequately represent *all* individuals who signed releases regardless of when the releases were signed. The Court finds there is no question that Jason Olsen could serve as an adequate representative of those potential class members who signed releases that fall within the "cooling-off period" set forth by Section 9–08–08 of the North Dakota Century Code *and wish to void their releases.* It is significant that the "cooling-off" statute renders releases signed within the cooling-off period as voidable rather than void. There may be potential class members who signed releases within the "cooling-off period" who are satisfied with the settlement they received from CPR. Thus, the Court finds it necessary to further limit the potential class to those members who signed releases within the "cooling-off period" and wish to void their releases.[5]

---

5. As a practical matter, it should not be difficult to identify those potential class members who signed releases within the cooling-off period.

However, the same analysis cannot apply to those potential class members who signed releases outside the "cooling-off period." According to CPR, 23,930 individuals have signed releases after February 18, 2002, which is thirty days after the "cooling-off period." If the Court were to accept the Plaintiffs' view, the Court would inevitably be called upon to determine the validity of the releases signed outside the "cooling-off period." Assuming some of these individuals would like to invalidate their releases, they would need to advance a theory other than the relief provided by the "cooling-off" statute. Such conflict between the named and potential class members who have not signed releases *or* have statutory support for invalidating their releases, and those proposed class members who do not have the same statutory basis for invalidating their releases, is significant enough to question whether the named Plaintiffs may adequately represent *all* of the proposed class members.

Both parties cite to authority purporting to support their respective positions regarding whether named plaintiffs who have not signed releases can adequately represent proposed class members who have signed releases. Neither party directed the Court's attention to any Eighth Circuit case law on this issue and it appears this issue has not been presented to the Eighth Circuit.

The Plaintiffs rely on a federal district court case from New York wherein the court determined that plaintiffs who had not signed releases were adequate representatives of proposed class members who had signed releases because the "plaintiffs have vigorously litigated issues that involve the releases." *Mui v. Union of Needletrades, Industrial and Textile Employees, AFL–CIO et al.*, 97 Civ. 7270(HB), 1998 WL 915901, 1998 U.S. Dist. LEXIS 20405 (S.D.N.Y. Dec. 30, 1998). However, the facts of the *Mui* case are distinguishable. In *Mui*, the releases obtained by proposed class members purportedly released a third party from any claims. The plaintiffs in *Mui* alleged the defendant (their labor union) had breached its duty of fair representation in reaching the settlement agreement with the third party, and, as a result the releases should be invalidated.

The matter presently before the Court presents a significantly different factual sce-nario—the releases signed by the some of the proposed class members purport to release CPR from the exact liability the Plaintiffs seek to establish. In addition, the named plaintiffs, including Jason Olsen, could prevail on their claims without litigating the validity of the releases signed outside the "cooling-off period." Thus, the Court does not find the *Mui* opinion applicable to the current dispute.

CPR cites to a Fifth Circuit employment discrimination case which held that named plaintiffs did not have standing to represent employees who had signed releases. *Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 551 (5th Cir.1988). The Fifth Circuit held:

> Because the named plaintiffs sought to obtain relief already obtained by employees who accepted backpay and signed releases, the [district court] found that the plaintiffs lacked standing to represent these employees. We find no error in the [district court's] determination.

*Id.*

The Court finds that the factual scenario presented in the current dispute is analogous to the *Bernard* case. Those proposed class members who signed releases outside the "cooling-off period" set forth in Section 9–08–08 of the North Dakota Century Code, have purportedly obtained the relief the named Plaintiffs seek. The validity of the releases signed after the "cooling-off period" is not an essential part of the named Plaintiff's claims. As such, the Court finds that the named Plaintiffs are not adequate representatives of the proposed class members who entered into releases with CPR *after* the "cooling-off period" as set forth in Section 9–08–08 of the North Dakota Century Code.

Whether such releases were obtained in contravention of public policy, or whether CPR may have disavowed these releases, are issues outside the scope of this litigation and better litigated by individuals who are subject to the releases. In reaching this decision, the Court expresses no opinion as to the validity of the releases signed after the "cooling-off period." As a result, the Court will only entertain class certification as to proposed class members who (1) have not signed releases with CPR or (2) have signed releas-

es within the "cooling-off period" as prescribed by North Dakota law and wish to void the releases.

The Plaintiffs also allege that the potential class members who signed waivers and releases did not, and could not, waive their rights to recover punitive damages, and any releases they signed would not be applicable to this portion of the class action. This assertion fails for the same reasons. The Plaintiffs' contention raises yet another issue that would inevitably have to be litigated, namely whether the releases covered punitive damages. The named Plaintiffs cannot adequately represent the individuals who signed releases outside the "cooling-off period." Similar to the issue of the validity of the releases themselves, issues concerning the scope of the releases and whether punitive damages are covered, are better litigated by individuals who are subject to the releases. In reaching this decision, the Court again expresses no opinion as to the validity and scope of the releases signed after the "cooling-off period."

▄▄▄ The issue of adequate representation also necessitates an inquiry into the adequacy of class counsel. The Plaintiffs assert their counsel has extensive experience litigating, trying, and settling class action lawsuits. CPR contends that because the Plaintiffs' counsel also represents other individual plaintiffs in pending personal injury lawsuit arising out of the train derailment, Plaintiffs' counsel has a conflict of interest and cannot adequately represent the current class action.

CPR's concerns appear to focus on the potential recovery of the Plaintiffs' counsel's separate clients. Most courts have held that class counsel may represent more than one class against the same set of defendants in large part because of the procedural safeguards in place to protect the proposed class; i.e., the court must approve any proposed settlement. *See e.g., Dietrich v. Bauer,* 192 F.R.D. 119 (D.N.Y.2000); *Sheftelman v. Jones,* 667 F.Supp. 859 (D.Ga.1987); *Anderson v. Bank of the South, N.A.,* 118 F.R.D. 136 (D.Fla.1987); 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1769.1, n. 21 (2d ed.1986 & Supp.2004). In fact, a federal district court in Minnesota held that

class counsel's participation in other closely-related lawsuits did not create a conflict and was instead of benefit to the class. *White v. National Football League,* 822 F.Supp. 1389, 1405 (D.Minn.1993). The Court finds the Plaintiffs' counsel's representation of other individual personal injury plaintiffs does not preclude them from providing adequate representation to the potential class members.

The Court finds that the named Plaintiffs' and their counsel have satisfied the adequacy of representation requirement of Rule 23(a) as to potential class members who (1) have not signed releases with CPR, or (2) have signed releases within the "cooling-off period" as prescribed by Section 9–08–08 of the North Dakota Century Code and wish to void the releases.

In summary, as to Rule 23(a), the Court finds that the Plaintiffs have satisfied the requirement of Rule 23(a) as to numerosity, commonality, typicality, and adequate representation as to potential class members who (1) have not signed releases with CPR or (2) have signed releases within the "cooling-off period" as prescribed by Section 9–08–08 of the North Dakota Century Code and wish to void the releases.

### 2. RULE 23(b) REQUIREMENTS

▄▄▄ Rule 23(b) also provides for several types of class actions. The Plaintiffs have defined their proposed classes in reliance on subsections (b)(2) and (b)(3), which provide:

An action may be maintained as a class action if the prerequisites of subdivision(a) are satisfied, and in addition:

. . .

(2) the party opposing the class has acted or refused to act on the grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods

for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(2), (3). However, when either subsection (b)(1) or (b)(2) is applicable, subsection (b)(3) should not be used, so as to avoid unnecessary inconsistencies and compromises in future litigation. *See DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1175 (8th Cir.1995); *Reynolds v. National Football League,* 584 F.2d 280, 284 (8th Cir.1978); 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1772, at 425 (1986) (discussing (b)(1)); § 1775, at 491 (discussing (b)(2)); § 1777, at 521 (noting that "the privilege to opt-out of the action should be operable only when the class action is maintainable under Rule 23(b)(3) alone").

### a. *MEDICAL MONITORING CLASS UNDER RULE 23(b)(2)*

The Plaintiffs propose to certify a class under Rule 23(b) as follows:

Medical Monitoring Class: A Rule 23(b)(2) class consisting of all persons who were in the anhydrous ammonia cloud in and around the city of Minot, North Dakota, on January 18, 2002.

The Eighth Circuit has held that "Rule 23(b)(2) certification is appropriate when plaintiffs seek injunctive relief from acts of [a defendant] 'on . . . grounds generally applicable to the class.' " *Paxton v. Union National Bank,* 688 F.2d 552, 563 (8th Cir.1982)(quoting *United States Fidelity & Guar. Co. v. Lord,* 585 F.2d 860, 875 (8th Cir.1978)). Rule 23(b)(2) classes are classes from which class members cannot "opt-out." *Paxton v. Union National Bank,* 688 F.2d 552, 558–59 (8th Cir.1982); *In re Federal Skywalk Cases,* 680 F.2d 1175, 1178 n. 7 (8th Cir.1982). Thus, "parties to a mandatory class are not free to initiate actions in other courts to litigate class certified issues." *In re Federal Skywalk Cases,* 680 F.2d 1175, 1180 (8th Cir.1982) (citing *Reynolds v. National Football League,* 584 F.2d 280, 283 (8th Cir.1978)).

The Plaintiffs propose "a medical monitoring program to provide screening for individuals exposed to the toxic cloud" and to "fund an epidemiological and public health study to explore the nature and extent of illness resulting from significant exposures to anhydrous ammonia." *See* Plaintiffs' Brief in Support of Motion for Class Certification, p. 29 (Docket No. 179).

Medical monitoring claims are a fairly new development in tort law, and the case law defining the appropriateness of class certification for such claims is inconsistent. *See generally* Pankaj Venugopal, *The Class Certification of Medical Monitoring Claims* 102 Colum. L.Rev. 1659 (2002). Some courts have determined a medical monitoring claim is a form of injunctive or equitable relief and thus, properly certified under Rule 23(b)(2). *See e.g., Dimich v. Med–Pro, Inc.,* 304 F.Supp.2d 517, 519 (S.D.N.Y.2004); *In re Diet Drugs,* Nos. 1203, 99–20593, 2000 WL 1222042 (E.D.Pa. Aug. 28, 2000); *Elliott v. Chicago Housing Authority,* No. 98 C 6307, 2000 WL 263730 (N.D.Ill. Feb. 28, 2000); *Katz v. Warner–Lambert Co.,* 9 F.Supp.2d 363, 364 (S.D.N.Y.1998); *In re Telectronics Pacing Systems, Inc.,* 172 F.R.D. 271 (S.D.Ohio 1997); *In re Copley Pharmaceutical, Inc. "Albuterol" Products Liability Litigation,* 158 F.R.D. 485 (D.Wyo.1994); *Yslava v. Hughes Aircraft Co.,* 845 F.Supp. 705 (D.Ariz.1993); *In re Day v. NLO, Inc.,* 144 F.R.D. 330 (S.D.Ohio 1992); *Boggs v. Divested Atomic Corp.,* 141 F.R.D. 58 (S.D.Ohio 1991); *see also* Shelia L. Birnbaum & Melissa Trepiccione, *The Federal Courts Split on Certification of Medical Monitoring Class,* 48 A.L.I. A.B.A. 533 (2003).

However, other courts have held that a medical monitoring claim is nothing more than a request for monetary relief, and thus, is not suitable for class certification under Rule 23(b)(2). *See e.g., Zinser v. Accufix Research Institute,* 253 F.3d 1180 (9th Cir.

2001) *amended and superceded on denial of rehearing by Zinser v. Accufix Research Institute, Inc.,* 273 F.3d 1266 (9th Cir.2001)(finding a request for a reserve fund for past and future damages, compensation for future medical treatment, other compensatory and punitive damages, and research into alternative methods for dealing with potential medical problems was injunctive in nature and "merely incidental to the primary claim for money damages"); *Barnes v. The American Tobacco Co.,* 161 F.3d 127, 130–31 (3d Cir.1998); *Cook v. Rockwell Int'l Corp.,* 181 F.R.D. 473, 479 (D.Colo.1998); *Dhamer v. Bristol–Myers Squibb Co.,* 183 F.R.D. 520 (N.D.Ill.1998); *Castano v. The American Tobacco Co.,* 160 F.R.D. 544, 551 (E.D.La.1995); *see also* Shelia L. Birnbaum & Melissa Trepiccione, *The Federal Courts Split on Certification of Medical Monitoring Class,* 48 A.L.I. A.B.A. 533 (2003).

Other courts have also held that a proposed medical monitoring class simply does not meet the requirements of Rule 23(b)(2). *See e.g. Thompson v. American Tobacco Co. Inc.,* 189 F.R.D. 544, 552 (D.Minn.1999) (lack of cohesion in the class); *In re Orthopedic Bone Screw Products Liability Litig.,* MDL No. 1014, Civ. A. 93–7074, 1995 WL 273597 (E.D.Pa. Feb. 22, 1995) (medical monitoring class not appropriate for claims involving medical devices).

Even when a court has recognized a claim for medical monitoring, another significant question is raised—whether such a claim requires a physical injury. Courts are split on this issue as well. Some courts have required a present physical injury before finding a claim for medical monitoring can be properly certified under Rule 23(b)(2). *See e.g., Metro–North Commuter Railroad Co. v. Buckley,* 521 U.S. 424, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997); *Ball v. Joy Technologies,* 958 F.2d 36 (4th Cir.1991) *cert. denied,* 502 U.S. 1033, 112 S.Ct. 876, 116 L.Ed.2d 780 (1992); *Thomas v. F.A.G. Bearings Corp.,* 846 F.Supp. 1400 (W.D.Mo.1994) *reconsideration granted in part,* 860 F.Supp. 663 (1994); *Bowerman v. United Illuminating,* No. X04CV 940115436S, 1998 WL 910271, 1998 Conn.Super. LEXIS 3575 (Conn.Super.Ct. Dec. 15, 1998); *see also* Samuel Goldblatt & Laurie Styka Bloom, *A Primer on Medical Monitoring,* 48 A.L.I. A.B.A. 499

(2000). Other courts have allowed plaintiffs to proceed without physical injuries. *See e.g., In re Paoli R. Yard PCB Litig.,* 916 F.2d 829 (3d Cir.1990); *Friends for All Children, Inc. v. Lockheed Aircraft Corp.,* 746 F.2d 816 (D.C.Cir.1984); *Carey v. Kerr–McGee Chemical Corp.,* 999 F.Supp. 1109 (N.D.Ill.1998); *Patton v. General Signal Corp.,* 984 F.Supp. 666 (W.D.N.Y.1997); *Gibbs v. E.I. DuPont De Nemours,* 876 F.Supp. 475 (W.D.N.Y.1995); *Bocook v. Ashland Oil, Inc.,* 819 F.Supp. 530 (S.D.W.Va. 1993); *Bower v. Westinghouse Electric Corp.,* 206 W.Va. 133, 522 S.E.2d 424, 431 (1999); *Bourgeois v. A.P. Green Industries, Inc.,* 716 So.2d 355 (La.1998); *Redland Soccer Club, Inc. v. Dep't of the Army and Dep't of Defense,* 548 Pa. 178, 696 A.2d 137 (1997); *Simmons v. Pacor, Inc.,* 543 Pa. 664, 674 A.2d 232 (1996); *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863 P.2d 795 (1993); *Miranda v. Shell Oil Co.,* 15 Cal.Rptr.2d 569 (5th Dist.1993); *Hansen v. Mountain Fuel Supply Co.,* 858 P.2d 970 (Utah 1993); *Theer v. Philip Carey Co.,* 133 N.J. 610, 628 A.2d 724, 733 (1993); *Meyerhoff v. Turner Const. Co.,* 202 Mich.App. 499, 509 N.W.2d 847 (1993); *Ayers v. Jackson Township,* 106 N.J. 557, 525 A.2d 287 (1987); *Burns v. Jaquays Mining Corp.,* 156 Ariz. 375, 752 P.2d 28 (1987); *Askey v. Occidental Chemical Corp.,* 102 A.D.2d 130, 477 N.Y.S.2d 242 (4th Dept.1984); *see also* Samuel Goldblatt & Laurie Styka Bloom, *A Primer on Medical Monitoring,* 48 A.L.I. A.B.A. 499 (2000).

The law in the Eighth Circuit on the topic is sparse. The Eighth Circuit addressed the propriety of a medical monitoring claim in *Trimble v. Asarco, Inc.,* 232 F.3d 946 (8th Cir.2000). In the absence of definitive Nebraska law on the issue of medical monitoring, the Eighth Circuit upheld the district court's finding that Nebraska law did not recognize either a cause of action for medical monitoring or a remedy involving the creation of a medical monitoring fund. *Id.* at 952. The Eighth Circuit held:

Plaintiffs still have not cited any Nebraska authority for the proposition that damages may be awarded for future medical monitoring costs in the absence of a present physical injury. Thus, our recog-

nition of such a cause of action would, in effect, expand substantive liability under Nebraska law. Under the circumstances, it would be both imprudent and improper for us to allow plaintiffs to pursue their medical monitoring claim. *Cf. Tucker v. Paxson Mach. Co.,* 645 F.2d 620 (8th Cir. 1981) (in diversity case under Missouri law, rejecting plaintiff's argument for adoption in federal court of expanded strict products liability doctrine under state law, on ground that the trend was not well established); *accord Birchler v. Gehl Co.,* 88 F.3d 518, 521 (7th Cir.1996) ("When we are faced with opposing plausible interpretations of state law, we generally choose the narrower interpretation which restricts liability, rather than the more expansive interpretation which creates substantially more liability."); *Pearson v. John Hancock Mut. Life Ins. Co.,* 979 F.2d 254, 259 (1st Cir.1992) (plaintiffs who chose federal forum "cannot justifiably complain if the federal court manifests great care in blazing new state-law trails"); *Villegas v. Princeton Farms, Inc.,* 893 F.2d 919, 925 (7th Cir.1990)("federal court is not the place to press innovative theories of state law"). *Id.* at 963. Another district court within the Eighth Circuit also declined to recognize either a claim for medical monitoring or damages in the form of a medical monitoring class. *See Thompson v. American Tobacco Co. Inc.,* 189 F.R.D. 544, 552 (D.Minn.1999) ("Given the novelty of the tort of medical monitoring and that the Minnesota Supreme Court has yet to recognize it as an independent theory of recovery, this Court is not inclined at this time to find that such a tort of (sic) exists under Minnesota law."). Still, other district courts within the Eighth Circuit have held that requests for medical monitoring classes were requests for monetary relief and not appropriate for class certification under Rule 23(b)(2). *See Smith v. Brown & Williamson Tobacco Corp.,* 174 F.R.D. 90, 100 (W.D.Mo.1997) (finding a rule 23(b)(2) class for medical monitoring relief was not appropriate when "the relief requested is in the form of money which, along with Plaintiff's many other claims for monetary relief demonstrates that monetary relief is the predominate relief sought"); *Thomas v. FAG Bearings Corp., Inc.,* 846 F.Supp. 1400, (W.D.Mo.1994) (declining to certify a class when the plaintiffs requested "the future costs of medical monitoring" finding such costs were nothing more than compensation for necessary medical expenses reasonably anticipated to be incurred in the future).

The North Dakota Supreme Court has not yet addressed the issue of whether North Dakota law recognizes a claim for medical monitoring. However, at least one state district court in North Dakota has rejected a request for medical monitoring claims finding the claims were "speculative" and "lack sufficient standards to resolve." *See North Dakota Dep't of Health, et al. v. The Burlington Northern and Santa Fe Railway Co.,* Civil No. 04–C–157 (Northeast Central Judicial District, Sept. 9, 2004).

■■■■ It is well-established that North Dakota law requires "proof of actual damages" for "torts of negligence, fraud and deceit." *Ziegelmann v. DaimlerChrysler Corp.,* 649 N.W.2d 556, 559 (N.D.2002) (holding the plaintiff's claim of injury, in a no-injury product liability lawsuit, was simply too speculative to constitute a legally cognizable tort injury). It is also well-established that North Dakota law allows a plaintiff to recover for "the amount of compensation for future economic damages." N.D.C.C. § 32–03.2–05 (requiring juries to make separate findings on the amount of compensation for future economic damages). Accordingly, it is clear North Dakota requires a legally cognizable injury to be present before damages may be awarded. Given these basic principles of North Dakota tort law, a plaintiff would be required to demonstrate a legally cognizable injury to recover any type of damages in a newly recognized tort, including a medical monitoring claim. However, the Court finds it is unnecessary to determine whether North Dakota would recognize a claim for medical monitoring because the relief the Plaintiffs seek through their medical monitoring claim is simply a request for future medical expenses.

The case law from jurisdictions that require an injury to proceed on a medical monitoring claim appear to create a "catch–22" for plaintiffs. Most courts have held that either (1) the plaintiff failed to show an inju-

ry or (2) for those who could show an injury, a claim of medical monitoring was not appropriate because if the plaintiff could show an injury, future medical costs could be recovered through traditional tort damages. *See e.g., Metro–North Commuter Railroad Co. v. Buckley,* 521 U.S. 424, 444, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997) (holding the Federal Employer's Liability Act did provide for liability to allow the recovery of medical monitoring costs); *Ball v. Joy Technologies,* 958 F.2d 36, 38 (4th Cir.1991) *cert. denied,* 502 U.S. 1033, 112 S.Ct. 876, 116 L.Ed.2d 780 (1992) (exposure to toxic chemicals at work place did not constitute a present injury); *Thomas v. F.A.G. Bearings Corp.,* 846 F.Supp. 1400, 1410 (W.D.Mo.1994) *reconsideration granted in part,* 860 F.Supp. 663 (1994) (holding exposure to contaminated groundwater did not constitute an actual injury, and even if the plaintiffs could show an injury, claim was essentially for future medical costs).

At first blush, these holdings appear harsh. However, on closer inspection, the apparent "catch–22" created by requiring an injured party to demonstrate a cognizable injury to recover medical monitoring costs does not deprive a plaintiff of any potential recovery. Rather, the creation of a medical monitoring class would create a situation where the Plaintiffs may recover twice for the same injuries. In their complaint, the Plaintiffs request the following damages: past, present and future personal injury; emotional distress; economic damages (including lost wages, lost business or other opportunities, loss of productivity, absenteeism, etc.); property damage; property value diminution or inconvenience, including remediation costs of private property clean-up or other abatement. *See* Second Amended Class Action Complaint, p. 12 (Docket No. 162). The Court is hard-pressed to distinguish between the damages sought for medical monitoring and the damages sought as a result of the personal injury claims—especially given the Plaintiffs' assertion that *all* members of *both* classes have suffered a physical injury. The damages under the medical monitoring claim and a portion of the damages under the personal injury claim appear to be compensation for future medical expenses. Thus, allowing both the personal injury claim and the medical monitoring claim would create a situation in which the Plaintiffs benefit from a double-recovery: once under the injury class for future medical expenses and again under the medical monitoring class for the same future medical expenses.

Those courts which have been amenable to the creation of a medical monitoring claim, and subsequent class certification, have been presented with requests to create a "court supervised" medical monitoring fund or program. *See e.g., In re Day v. N.L.O., Inc.,* 144 F.R.D. 330, 335–36 (S.D.Ohio 1992); *Elliott v. Chicago Housing Authority,* No. 98 C 6307, 2000 WL 263730 (N.D.Ill. Feb. 28, 2000); *Ayers v. Jackson Township,* 106 N.J. 557, 525 A.2d 287 (1987). These courts expressed paternalistic reasons for certifying the class, such as ensuring the monies are used exclusively for medical monitoring and garnering the benefit to the public in general from generating medical data for group studies. In this case, the Plaintiffs have not requested a court-supervised medical monitoring fund or program.

Finally, the combination of the overlap between damages for medical monitoring and personal injury claims, and the mandatory nature of class certification under Rule 23(b)(2), makes class certification inappropriate in this circumstance. As the Court and the parties are aware, numerous cases arising out of the train derailment are currently pending in other jurisdictions. *See Lundeen v. Canadian Pacific Railway Co.,* 342 F.Supp.2d 826 (D.Minn.2004) (listing thirty cases pending in federal district court in Minnesota as of October 26, 2004); *see also* Affidavit of Deanne M. Wavra, ¶ 5 (stating the Defendants are a party to 168 different lawsuits arising out of the derailment involving 252 individually named plaintiffs) (Docket No. 195). By certifying a medical monitoring class of "all persons who were in the anhydrous ammonia cloud in and around the city of Minot, North Dakota, on January 18, 2002," the Court would be unduly interfering with the case management decisions of individual plaintiffs. The Plaintiffs from every pending personal injury suit arising from the train derailment would necessarily become a member of the proposed medical monitoring

class. This would only serve to magnify the problem of distinguishing between damages for medical monitoring claims and damages for future medical expenses. In order to prevent double recovery, this Court would become inextricably entangled with the details of every pending personal injury lawsuit arising from the derailment. Such a situation is untenable and unwarranted.

To summarize, the Court finds that the certification of a medical monitoring class as proposed by the Plaintiffs fails to satisfy the requirements of Rule 23(b)(2). The Court finds that the Plaintiffs request for a medical monitoring class is nothing more than a request for future medical expenses and thus not "final injunctive relief or corresponding declaratory relief" as required by Rule 23(b)(2).

#### b. INJURY CLASS UNDER RULE 23(B)(3)

The Plaintiffs propose to certify a class under Rule 23(b) as follows:

Injury Class: A Rule 23(b)(3) class consisting of all persons who were in the anhydrous ammonia cloud in and around the city of Minot, North Dakota, and who were adversely affected by the release of the hazardous chemical on January 18, 2002, and who have sustained property damages, property value diminution, personal injuries, emotional, mental or economic damages, or inconvenience as a result of the derailment and hazardous chemical release.

Class actions certified under Rule 23(b)(3) are commonly referred to as "common question" or "damages" class actions. *Blades v. Monsanto Co.*, 400 F.3d at 568–69 (8th Cir. 2005). "To certify a class action under Rule 23(b)(3), the Court must find that: (1) common questions predominate over any questions affecting only individual members; and (2) class resolution is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* In addition, class members in a Rule 23(b)(3) class are free to "opt-out." *In re Federal Skywalk Cases*, 680 F.2d 1175, 1178 n. 7 (8th Cir. 1982).

"The requirement of Rule 23(b)(3) that common questions predominate over individual questions 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Blades v. Monsanto Co.*, 400 F.3d at 566–67 (8th Cir.2005) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual. If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it become a common question.

*Id.* (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 135–40 (2d Cir.2001)). "[W]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure*, § 1778 at 528–29 (2d ed.1986). Thus, "the fundamental question is whether the group aspiring to class status is seeking to remedy a common legal grievance." 3B *Moore's Federal Practice* ¶ 23.45[2] at 23–306 to 23–307 (2d ed.1995). The predominance requirement of Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a). *Amchem v. Windsor*, 521 U.S. 591, 623–24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

In determining whether Rule 23(b)(3) is satisfied, a Court must "conduct a limited preliminary inquiry, looking behind the pleadings." *Blades v. Monsanto Co.*, 400 F.3d at 566–67 (8th Cir.2005) (citing *General Tel. Co. of Southwest v. Falcon*, 457 U.S., 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). However, "the court must look only so far as to determine whether, given the factual setting of the case, if the plaintiffs general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Id.* This preliminary inquiry may require the Court to resolve

some disputes regarding the factual setting of the case. *Id.*

> Nonetheless, such disputes may be resolved only insofar as resolution is necessary to determine the nature of the evidence that would be sufficient, if the plaintiff's general allegations were true, to make out a prima facie case for the class. The closer any dispute at the class certification stage comes to the heart of the claim, the more cautious the court should be in ensuring that it must be resolved in order to determine the nature of the evidence the plaintiff would require.

*Id.* This review necessitates an examination of the underlying elements required to establish liability for the Plaintiffs' claims. *Id.* at 568–69.

The United States Supreme Court in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), noted:

> Even mass tort cases arising from a common cause or disaster may, depending upon the circumstances, satisfy the predominance requirement. The Advisory Committee for the 1966 revision of Rule 23, it is true, noted that "mass accident" cases are likely to present "significant questions, not only of damages but of liability and defenses of liability, . . . affecting the individuals in different ways." Adv. Comm. Notes, 28 U.S.C.App., p. 697. And the Committee advised that such cases are "ordinarily not appropriate" for class treatment. *Ibid.* But the text of the Rule does not categorically exclude mass tort cases from class certification, and District Courts, since the late 1970's have been certifying such cases in increasing number. *See* Resnick, *From "Cases" to "Litigation"*, 54 Law & Contemp. Prob. 5, 17–19 (Summer 1991) (describing trend). The Committee's warning, however, continues to call for caution when individual stakes are high and disparities among class members great.

*Id.* at 625, 117 S.Ct. 2231.

■ The Plaintiffs contend that common questions of liability, causation, and the toxicity of anhydrous ammonia predominate over individual issues. The Plaintiffs state that the proposed class members can all use the same facts to establish CPR's liability for their alleged injuries. Additionally, the Plaintiffs assert that they can establish the general dose of anhydrous ammonia the class members were exposed to through their expert witnesses.

CPR responds by contending that individual issues of causation and damages predominate. According to CPR, a jury would need to determine issues such as the extent of the exposure of each class member, the medical histories and pre-existing conditions of each class member, the behavior of the class members during their exposure (whether they stayed in their home or ventured outside) and the varying medical treatment and expense of such treatment. Thus, CPR contends the Plaintiffs are unable to satisfy the predominance requirement of Rule 23(b)(3).

A majority of CPR's concerns relate to the nature and extent of the damages a specific class member may be entitled to receive. The unremarkable fact that each potential class member has sustained an unique amount of damages is not dispositive. Indeed, if such an assertion were routinely given substantial weight, class actions under Rule 23(b)(3) would rarely, if ever, be certified. As numerous courts have noted, "Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues." *Carnegie v. Household Int'l Inc.*, 376 F.3d 656, 661 (7th Cir.2004).

CPR's contention that the issues of causation cannot be proven on a class-wide basis presents a more difficult question. It is clear from the record that issues concerning CPR's alleged negligence or fault can be established though common evidence.[6] It is also clear that the general issue of whether exposure to anhydrous ammonia can cause injuries to individuals and their property can likewise be proven by common evidence. However, the issue of whether the train derailment on January 18, 2002, was the proximate cause of each class members' alleged

---

6. In the event the Plaintiffs seek punitive damages, that issue as well, can be proven through common evidence.

injuries is an inherently more individualized issue.

After carefully reviewing the evidence submitted the parties, the Court finds that the central issues in the action that are common to the proposed class members predominate over individual issues. The Court recognizes that even though important issues will need to be addressed separately, common issues of CPR's alleged negligence, the toxic nature of anhydrous ammonia, and the injuries caused by exposure are issues at the heart of this litigation. The Plaintiffs have clearly established that they are a "group seeking to remedy a common legal grievance." *See* 3B *Moore's Federal Practice* ¶ 23.45[2] at 23–306 to 23–307 (2d ed.1995). As such, the Court finds that the Plaintiffs have satisfied the requirement of Rule 23(b)(3) that common issues predominate over individual issues.

The Plaintiffs must also show that a class action is superior to other available methods. The Plaintiffs assert that a class action is superior to thousands of individual actions, with increased expense, duplication of discovery, and potential for inconsistent results. CPR contends that because several potential class members have already filed their own lawsuits, the potential for inconsistent results exists. CPR also argues that because of other pending lawsuits, the opt-out rate for a class certified under Rule 23(b)(3) will be extremely high.

Given the predominance of common issues surrounding CPR's potential liability in connection to the train derailment, the Court finds that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The Court notes that if these claims were tried separately, the amount of repetition would be enormous. It would be manifestly inefficient to duplicate the discovery process and to hold multiple trials with juries hearing the same evidence and deciding the same issues. Such repetition would undoubtedly consume more judicial resources than even the daunting nature of this class action. Accordingly, the

Court finds that the Plaintiffs have satisfied the requirement of Rule 23(b)(3) that a class action be superior to other available methods for the fair and efficient adjudication of the controversy.[7]

To summarize, the Court finds that the Plaintiffs have satisfied the requirements of Rule 23(b)(3). The Plaintiffs have demonstrated that common questions of law and fact predominate over any questions affecting only individual members of the proposed class. The Plaintiffs have also demonstrated that a class action is a superior method for the resolution of these claims. In reaching these conclusions, the Court has carefully considered the interests of members of the class in controlling the prosecution or defense of separate actions, the nature and extent of the previously commenced lawsuits, the desirability of concentrating the litigation of the claims in the particular forum, and the issues likely to be encountered in the management of this litigation.

### III. *CONCLUSION*

The Defendants' Motion for Evidentiary Hearing on Class Certification is **DENIED** (Docket No. 189). The Plaintiffs' Motion for Class Certification is **GRANTED IN PART** (Docket No. 179). The Court certifies the following class under Rule 23(b)(3):

> A class consisting of all persons who have not signed releases with the Defendants or who have signed releases within the "cooling-off period" as prescribed by Section 9–08–08 of the North Dakota Century Code and wish to void the releases, and who were exposed to the anhydrous ammonia cloud in and around the city of Minot, North Dakota, and who were adversely affected by the release of the hazardous chemical on January 18, 2002, and who have sustained property damages, property value diminution, personal injuries, and economic or non-economic damages as a result of the derailment and hazardous chemical release.

---

7. The Plaintiffs also set forth a "trial plan," which includes several options such as statistical sampling, monitored depositions, and bifurcation of the liability and damages portions of the trial. The Defendants respond by rejecting the Plaintiffs' trial plan. The Court finds it is premature to determine the best course of action this lawsuit should take. Therefore, the Court expresses no opinion as to the issues of sampling, monitored depositions, and bifurcation of the liability and damages portions of the trial.

The Court also **ORDERS** that pursuant to Rule 23(g), the attorneys constituting class counsel are Mike Miller and Stacey Elizabeth Tjon of Solberg Stewart Miller Johnson Tjon Kennelly Ltd.; Ronald S. Goldser, John Gordon Rudd, Jr., and David M. Cialkowski, of Zimmerman Reed PLLP; and Daniel E. Bencel, Jr., Darryl J. Bencel of Daniel E. Bencel, Jr. Law Firm. It is further **ORDERED** that pursuant to Rule 23(c), counsel shall present to the Court within thirty (30) days, a proposed notice which under the circumstances will provide the best notice practicable to the class.

**IT IS SO ORDERED.**